By the Court.—Van Vorst, J.
It cannot be well insisted that a receiver, who has been appointed in an orderly way by a court having jurisdiction, and who has in good faith entered upon his duties as such, should not be shielded in his proper action under the order, while it is in force, and be indemnified out of the fund entrusted to his guardianship, for legal charges and disbursements, reasonably made and incurred, although the order should be afterwards reversed for error. This action was against Belmont-and Lucke as copartners. They were charged in the complaint with having drawn the bills. Belmont was absent from the country, and not served with process. The defendant Lucke, who was served, and from whom *234 the money was taken by the receiver, in his answer denied that he was a partner with Belmont at the time the money was paid and the bills drawn, and alleged that he had not become such until three years thereafter, He denied that he was one of the drawers of the bills, or had any interest in them, and averred that they were purchased of and were drawn by Belmont.
These considerations are referred to, however, not as conclusive upon the rights of the receiver, because it may well be claimed that the plaintiff’s complaint and affidavit disclosed facts uncontradicted, sufficient to give the court jurisdiction of the action by the service on the defendant Lucke, of the summons and complaint.
It is quite apparent, however, that the facts disclosed by the case before us, did not justify the appointment of a receiver.
The case shows that the moneys with which the bills were purchased had been forwarded to London to the persons on whom.they were drawn. But even had the moneys been returned to the drawer of the bills, as was claimed by. the plaintiff, but which was denied by the defendant Lucke, no ground appeared by the papers for interfering with the legal possession of same by the holders.
Their original and later possession. was lawful. There was no allegation or claim that the money was in danger of being lost, or would be in any jeopardy during the pendency of the action. The case, as made, was not within either class in which the court was empowered to appoint a receiver (Code, § 244.)
It was an attempt to engraft into an action for money had and received, the provisional remedy of a receivership. The manner, however, in which the appointment of the receiver was effected, and the part he took therein, affects seriously his position and claims.
If he intruded into the office by his own seeking, in violation of the rights of the defendants, and by a *235 breach of the rules and practice of the court, and the order for his appointment was made and entered through a breach of the stipulations of the parties and their counsel with each other, without being asked for by either, and in opposition to their wishes, and before the case was submitted to the judge, and through the procurement of a stranger to the suit, it cannot be reasonably claimed for him that he is entitled to the consideration and favor with which the law regards receivers who are regularly and in the orderly method of judicial procedure constituted such.
The affidavits and papers leave no room for doubt that the order for his appointment was entered before the case had been fully submitted to the judge, and in direct opposition to the agreement and stipulation of the'attorneys for the parties.
Upon the presentation of the defendants’ papers in opposition to the motion made by plaintiff for a receiver, the plaintiff ’ s attorney, fearing that the facts disclosed by the defendants’ case would defeat the motion, asked for time to put in further affidavits. Leave was granted, but on the condition that the defendants should .have opportunity to reply to the affidavits by a day named. The case was not submitted; and before the day named, and before the defendants had an opportunity to make affidavits in rebuttal to the plaintiff’s further affidavits, the service of which had been delayed, the appointment of a receiver was made and the order entered.
The order recites that it was made after hearing H. E. Tallmadge, of counsel for plaintiff, yet Mr. Tallmadge has testified that when he handed in his additional affidavits to' the j udge, he made no application for a receiver, and the defendants’ counsel has testified that on the day the additional affidavits were served, July 14, he made known to the justice that the plaintiff’s replying affidavits had just been served, that some *236 little time would be necessary to prepare rebutting affidavits, and that the justice stated that no further action would be taken without notice to him.
Tallmadge, who testifies that he drew almost all' of the papers for the plaintiff in the action, says that he does not know when the order appointing a receiver was made, or when it was entered. Roger J. Page, the attorney for the plaintiff, in a letter written to the defendants’ attorneys, under date of July 17, expressed surprise, and states facts showing that the order was made in" opposition to the stipulations of the parties, and offered to aid in reinstating the case according to the stipulations and understanding of the attorneys for both parties.
The question then occurs, upon whose application or urgency was the appointment ordered, or who, taking advantage of the condition of the proceeding, by deceit, fraud, or other bad faith, applied for, and obtained the order from the judge.
On July 16, James Henderson addressed a note to Tallmadge, the plaintiff’s counsel, requesting him' to call “forthwith,” at his, Henderson’s office.
Upon calling, he found Mr. Henderson standing with the order in Ms hands; it had not been entered. This was on July 16.
Henderson has given no explanation of the manner in which he became possessed of this original order, and the inference that he obtained it from the judge, under the facts and circumstances of the case seems unavoidable.
Henderson was a stranger in the suit and proceeding. He represented no interest involved. A receiver can only be asked for, or nominated by a party interested. As a stranger, he had no right to take part in, or influence the proceedings in court. In Attorney General v. Day, 2 Madd. 246, it is asked by the vice chancellor, “ Is it according to the regular course of the *237 court for a person not interested to propose a receiver ? If so, persons from all quarters would besiege the court, great struggles and competitions would ensue. There is no color for saying that strangers can in such case come in before the master ; it would lead to indefinite importunities.” If not before the master, a stranger could not appear before the judge. But on July 16, when he had the order in his hands, Henderson was distinctly apprised by the plaintiff’s counsel of the facts which showed that the order was impropérly obtained, and made. If he did not know before, he was then informed that the case had not been submitted; that the parties did not want a receiver, and that negotiations were pending for a settlement of the controversy between all concerned.
Had the receiver himself been acting in good faith up to this moment, and before the order was actually entered, or filed, here was a distinct notice to him through his counsel, of the condition of the case, and the opposition of the parties to a receivership. If he proceeded further, he did so at his own peril and risk.
Henderson agreed that the order should not be entered until Monday, July 19. In defiance of the notice, and by a breach of his promise, the order was entered the next day. As the order was last seen in his hands, it could not have been entered without his knowledge and consent, and in the absence of any explanation from him, he must be deemed the procuring cause.
Henderson drew the receiver’s bond, which was filed before the demand was made upon the defendant Lucke for the money. From the rapidity with which they moved in the matter, on July 16 and 17, it would seem that both he and the receiver were familiar with the character and condition of the suit. It seemed a race to get possession of the fund, before the action could be settled by the only parties in interest. Tallmadge, the counsel for the plaintiff, testifies that he had seen *238 Barr several days before' at court, and had told him that they did not want a receiver, but were going to give a bond of indemnity.
The first charge in the account produced by Mr. Henderson, before the referee, is for a retainer in the action as counsel, examining the pleadings and proceedings, and making copies of same. This is followed by a charge for drawing the receiver’s bond, and attending to its execution ; and the obtaining a certified copy of the order of the appointment, and serving same on the defendant Lucke. If the chronological order of the items in the account shows the times the services were rendered, it would seem thaj; the examination of the pleadings and proceedings by Henderson, was the service he first rendered. For this service he has charged five hundred dollars, which would indicate that the examination was a careful one. Such examination might have well disclosed to him, and the receiver, who is a counselor at law, that the case was not one for a receiver. In addition, as has already been observed, he had notice on July 16, that the parties did not want one, and also that the case had not been submitted. But besides all this, on July 17, when Mr. Henderson and the receiver called upon the defendant Lucke, and demanded the money, they were both distinctly notified of facts which showed the appointment to be improper, irregular, and to the prejudice of the parties ; a bond of indemnity satisfactory to the parties had been prepared, and the defendant was forbidden in the presence of the receiver, by the plaintiff’s counsel and attorney, to pay oyer the money to him. The reason assigned, being that they did not want a receiver. This direct notification, with what had previously occurred, might have reasonably caused the receiver to pause before taking the extreme measures, through his own counsel, Mr. Henderson, to punish the defendant Lucke for a contempt in not responding to his demand, *239 which resulted in an order, and warrant, commiting him to the common jail of the county of New York, until the money should be paid,, and to escape which imprisonment, the defendant was obliged to pay to him the sum of money in question. Although purporting to be taken in this action, such proceeding was not taken in the interest of the parties to the. suit.
It cannot be that proceedings for the appointment of a receiver so initiated and completed can well give the appointee any just claim to subject the fund, of which he has so possessed himself, with the charges which he preferred on the accounting before the referee. They are wholly unreasonable and unnecessary. A person cannot thus thrust himself into a receivership, and get possession of a fund which is in no danger, is already in safe hands and needs no protection, and in opposition to the wishes and protests of all concerned, and then fasten upon the fund the charges incident to his intrusion, and for moneys paid thereout by himself, and for services to attorneys and counsel employed by him to initiate needless litigation and to defend his position.
The receiver has voluntarily placed himself in the position he occupies. The order appointing him has been reversed by the general term, as well as the order directing the payment of the moneys to him, and the action itself was ended when the case was reached at the trial term, -by a judgment in favor of the defendants for a failure of the plaintiff to prosecute the same.
Whatever loss the fund has suffered while in his hands the receiver should bear. He should not be allowed to shift it from himself to the parties.
It is no conclusive reason for allowance of these claims that the appointment was made by the order of the court. There is an underlying vice, which is shown in the manner in which.the order was obtained and entered, for which the apppintee must be held to be *240 responsible. It would not answer to allow one to hold up for his defense, and urge as an indemnity for moneys paid, and as a ground for claims for services rendered and liabilities incurred, and which must be • considered unreasonable and unnecessary, an order so obtained. 1 ‘ JSfullus commodum cópese potest de injuria a sua propria.'1'1
And a judgment may be questioned if pronounced through fraud, contrivance or covin of any description ' (Broom Leg. Max. 335).
Of the disbursements claimed by the receiver two thousand • five hundred dollars was made to Mr. Page, the attorney, upon an order filed after the defendant had been made a party to the suit on his own motion, and was founded upon no distinct affidavit showing the services rendered or the reasons for this large demand, and this order has also been reversed by the general term. The claims interposed by Mr. Henderson, for services as attorney and counsel for the receiver, amount to the sum of four thousand nine hundred and ninety-five dollars. We think the judge at special term decided correctly when he disallowed all these claims, and held that the receiver was not entitled to compensation out of the fund in question. The learned judge says the fund was subjected to the order and to the moneys paid by the receiver himself, by an act wrongful against the defendants. “ If this wrongful act had not been done the fund would not have suffered depletion, from an order which should not have been made against the defendant.”
The order appealed from is affirmed, with costs.
Speib, J., concurred.